**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Stephen J. Green, | ) | Case No. 2:23-cv-03559-BHH-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Ms. Baldwin; Mr. Nicholson; | ) | |
| Mr. Spitzer; Ms. A. Stewart; Ms. Mabe; | ) | |
| Mr. Brian Stirling; South Carolina | ) | |
| Department of Corrections; Mr. Jenkins; | ) | |
| and Ms. Felicia McKie, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Stephen J. Green ("Plaintiff"), a state prisoner appearing *pro se* and *in forma pauperis*, filed this action under 42 U.S.C. § 1983, based on claims of inadequate dental care. (Dkt. No. 1.) Currently before the Court are separate Motions for Summary Judgment filed by Defendants Cynthia Baldwin and Adam Jenkins, both licensed dentists (collectively, "Dental Defendants" or "Defendants").[1] (Dkt. Nos. 154; 155.) Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

For the reasons set forth below, the undersigned recommends Defendants' Motions be granted in part and denied in part. Specifically, summary judgment should be denied to Defendants Baldwin and Jenkins on the basis of failure to exhaust. As for the merits of Plaintiff's claims, the

---

[1] The remaining Defendants filed a separate Motion for Summary Judgment on June 10, 2024. (Dkt. No. 151.) Subsequently, the Court was informed that Plaintiff had agreed to a settlement with Defendants Nicholson, Spitzer, Stewart, Mabe, Stirling, the South Carolina Department of Corrections, and McKie. Accordingly, on January 9, 2025, the undersigned dismissed their Motion for Summary Judgment as moot, with leave to refile if necessary. (Dkt. No. 191.) Upon information and belief, a stipulation of dismissal is forthcoming specific to the remaining Defendants.

undersigned recommends that summary judgment should be granted to Defendants Baldwin and Jenkins on Plaintiff's § 1983 deliberate indifference claims.

## BACKGROUND

### A.     General Background

In this action, Plaintiff complains about inadequate dental care that he has received while in prison. Most relevant to the instant Motions, Plaintiff alleges Dr. Baldwin was deliberately indifferent to Plaintiff's serious medical needs while Plaintiff was at Perry Correctional Institution ("Perry") when she: (1) failed to diagnose and then adequately treat Plaintiff's periodontitis; and (2) failed to treat Plaintiff's cracked tooth. (Dkt. No. 35-2 at 7–10; 17–23.) Plaintiff alleges Dr. Jenkins was deliberately indifferent to Plaintiff's serious medical needs when he: (1) failed to perform proper treatment for Plaintiff's periodontitis while Plaintiff was at Perry; and (2) then failed to follow up with Plaintiff after Plaintiff's transfer to Broad River Correctional Institution ("Broad River").[2] (Id. at 10–12; 17–23.)

Plaintiff filed this action on July 24, 2023, and he filed a verified Amended Complaint[3] on December 23, 2023. (Dkt. No. 35.) Plaintiff seeks compensatory and punitive damages for the alleged constitutional violations. (Dkt. No. 35-2 at 24.) On June 10, 2024, Defendants Baldwin and Jenkins filed their separate Motions for Summary Judgment (Dkt. Nos. 154; 155). The next day, this Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond to the Motions. (Dkt. No. 152.) Plaintiff filed responses in opposition on

---

[2] While the Amended Complaint identifies Defendant Dr. Nicholson as the individual defendant specific to these allegations, Plaintiff has since clarified that, because of realizations made in discovery, he "is referencing" Defendant Jenkins. (Dkt. No. 174 at 2; Dkt. No. 175 at 5; *see also* Dkt. No. 151-3.)

[3] "A complaint is 'verified' if it is 'signed, sworn, and submitted under penalty of perjury.'" *Goodman v. Diggs*, 986 F.3d 493, 495 (4th Cir. 2021) (quoting *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020)).

September 19, 2024.[4] (Dkt. Nos. 174; 175.) Defendants filed separate reply briefs on October 7, 2024 (Dkt. Nos. 185; 186) to which Plaintiff filed a sur-reply (Dkt. No. 189). The Motions have been fully briefed and are ripe for review.

    **B.    Evidentiary Record**

In support of their Motions for Summary Judgment and replies, the Dental Defendants rely on their personal sworn affidavits as well as sworn affidavits from other Defendants; Plaintiff's medical record; Plaintiff's grievance history, and Plaintiff's deposition testimony. In his opposition briefs, Plaintiff relies on the allegations in his verified Amended Complaint, his submitted request to staff member ("RTSM") forms and grievance history, his dental requests, and discovery responses and deposition testimony from certain Defendants.

According to Plaintiff's verified Amended Complaint, "on or about January 2022, Plaintiff noticed his teeth/gums were bleeding heavily and signed up for dental via sick call/dental request to be seen by Ms. Baldwin." (Dkt. No. 35-2 at 7.) Baldwin "provides general dentist services to inmates at Perry." (Dkt. No. 154-3 at 1.) Plaintiff's first documented complaint in the record is his "Dental Request[]" dated April 6, 2022, in which he complains of bleeding gums, but notes that his "teeth or gums don't hurt." (Dkt. No. 175-1 at 37.) Baldwin's "doctor note" from April 7, 2022 states, "Patient sent HSR stating his gums are bleeding. Inform patient to keep teeth and gums brushed regularly and he will be scheduled for an exam on Max Dental day." (Dkt. No. 151-3 at 1.) Plaintiff submitted a request to staff member on April 25, 2022, continuing to complain of bleeding gums. (Dkt. No. 175-1 at 36.) It is undisputed Plaintiff was first seen by Baldwin on May 25, 2022. (Dkt. Nos. 175 at 3; 154-3 at 1; 151-3 at 1.) Baldwin avers, and her "Doctor's note"

---

[4] Plaintiff received several extensions of time to file his responses in opposition. (Dkt. Nos. 160; 169; 172.) In his response briefs, Plaintiff clarifies he is not bringing any Fourteenth Amendment claims against Defendants Baldwin and Jenkins. (Dkt. Nos. 174 at 15; 175 at 32.)

shows, that she "performed a limited oral examination" at that time. (Dkt. Nos. 154-3 at 1; 151-3 at 1.) According to Baldwin, and as recorded in her Doctor's Note, "I observed moderate calculus buildup but did not observe heavy bleeding; Plaintiff's gums did not alarm me. I provided him with a full mouth cleaning, removed calculus, and provided oral health instructions. Plaintiff did well, and I thought the visit was without incident." (Dkt. No. 154-3 at 1; 151-3 at 1.)

On June 30, 2022, Plaintiff submitted another "Dental Request[]," stating "the bleeding has not stopped[;] it's constant and not just when I brush my teeth." (Dkt. No. 175-1 at 34.) According to Plaintiff, Baldwin's responded on July 11, 2022, stating "Bleeding is a sign of gingivitis and if it persist [sic] it may be periodontal disease. Periodontal disease means there can be bone loss if there is a lot of bone loss the tooth may need extraction. Will be scheduled for a Panorex x-ray."[5] She further recommended Plaintiff "gargle with salt/warm water."[6] (Dkt. Nos. 35-2 at 7; 175 at 13.) Defendant Dr. Nicholson, the Division Director of Dentistry for SCDC, avers that "Periodontal disease . . . is an infection of the gums and is caused by poor oral hygiene. . . . Periodontal disease is a very slow progressing condition." (Dkt. No. 151-2 at 2, 5.)

Baldwin avers that when she "received communications from Plaintiff that his gums were still bleeding, [she] planned for Plaintiff to receive a Panorex X-ray for further evaluation." (Dkt. No. 154-3 at 1.) Plaintiff submitted a RTSM on August 30, 2022, referencing his prior appointment where Baldwin "cleaned my teeth and recommended I gargle with salt water/warm water due to being on RHU." (Dkt. No. 175-1 at 33.) He states, "my problem is getting worse not better." (*Id.*)

---

[5] "A panoramic X-ray is a two-dimensional X-ray used in the dental field. It displays both jaws, the upper and lower, as well as the teeth, on the same film. These images are sometimes called 'panorex' after an original model of the X-ray machine." *verywellhealth*, https://www.verywellhealth.com/panorex-definition-of-panorex-1059431 (last visited Jan. 23, 2025).

[6] While Plaintiff's June 30, 2022 dental request is in the record, it cuts off most of Baldwin's response and is undated. (Dkt. No. 175-1 at 34.) The legible portion in the record states, "bleeding is a sign of gingivitis [illegible] periodontal disease means there could be [illegible]." (*Id.*) However, Defendants do not dispute Plaintiff's characterization of Baldwin's response.

4

Baldwin responded to this RTSM on September 7, 2022, stating that Plaintiff would be scheduled for a Panorex X-ray "to show the roots of all your teeth," and he should keep brushing in the meantime (*Id.*) That same day, she entered a note in Plaintiff's record to "schedule Panorex." (Dkt. No. 151-3 at 1.) Plaintiff would need to be transported to another institution to receive the Panorex X-ray. (Dkt. No. 175-1 at 13.) According to Baldwin, at that point, she "also decided to get a second opinion regarding Plaintiff's gums from my Dental Director, Dr. Floyd Nicholson." (Dkt. No. 154-3 at 2.)

Relevant here, the record shows that Plaintiff was housed in the Restrictive Housing Unit during the time period relevant to this case. (Dkt. No. 175-1 at 30–37.) Baldwin and Nicholson aver that "for security reasons," RHU inmates typically only see the dentist on Max Dental Day, when adequate security can be provided. (Dkt. Nos. 151-2 at 1–2; 154-3 at 2.) Baldwin avers the "same issue arises when RHU inmates need to be transported outside of Perry for dental treatment." (Dkt. No. 154-3 at 2.) Baldwin entered a "Doctor's note" on September 22, 2022 and October 18, 2022, stating, "security unable to escort patient from D dorm on Max Dental Day." (Dkt. No. 151-3 at 1.) She entered a "Doctor's note" on September 29, 2022, stating, "Reschedule. Dental Director Nicholson stated that he will need to cancel due to issues in Columbia. Also, Captain Harouff had inquired if patient needed to be seen today, but I explained not today since Dr. Nicholson had to reschedule." (*Id.*) Baldwin avers that she has "no control over the security measures" and "over what things RHU inmates are allowed to access or have." (Dkt. No. 154-3 at 2.)

On October 19, 2022, Plaintiff submitted another RTSM about "the heavy bleeding of my gums/teeth" and "the same cracked tooth in the back that has yet to be addressed . . . although it was noted." (Dkt. No. 175-1 at 32.) In her affidavit, Baldwin avers that "Plaintiff . . . started

complaining of a cracked tooth in October of 2022. I do not recall observing, commenting on, or otherwise knowing about the cracked tooth before this time. My common practice when I observe cracked teeth is to note them in the dental records." (Dkt. No. 154-3 at 2.) In his Amended Complaint Plaintiff alleges that during his "April 2022 visit" with Baldwin, she did not "address the cracked/half missing tooth present, even though she verbally commented on it." (Dkt. No. 35-2 at 7.) As further support for this allegation, Plaintiff offers an email sent from a third party to Defendant Dr. Spitzer on April 13, 2023, stating Plaintiff "has a big deep cavity to molar on left he will need an antibiotic prior to his appt." (Dkt. No. 175 at 3; 175-1 at 35.) According to Plaintiff's response brief, this email was "describ[ing]" his "cracked tooth." (Dkt. No. 175 at 3.) However, there is no evidence indicating that Plaintiff's referenced "deep cavity" on April 13, 2023, reflects the condition of Plaintiff's teeth during the alleged "April 2022 visit" with Baldwin.

The record includes an email from Baldwin to third-party SCDC employees, dated October 26, 2022, stating she "will have a Periodontist visiting" on October 31, 2022. (Dkt. Nos. 175-1 at 27; 155-4 at 2.) Baldwin states she "would like to see [Plaintiff] . . . on that day." (*Id.*) She continues,

> I know this is not the day for Dental to see a Max patient but I have been scheduling and rescheduling Green because he keeps complaining about the state toothpaste causing his teeth to bleed. I have not been able to see him. Now, recently, he is complaining not only about his gums bleeding, but also about a cracked tooth that he wants treated. Dr. Jenkins is willing to extract the tooth if it needs extraction, without needing a Panorex. This is great news because Dental doesn't have to send a patient from D dorm to Columbia for a Panorex!

(*Id.*) A record from Perry dated October 31, 2022 documents various dental procedures performed on inmates by Dr. Jenkins and assisted by Baldwin. (Dkt. No. 155-4 at 1.) This record documents

that on October 31, 2022, Plaintiff "refused to be escorted from Max Dorm."[7] (Dkt. No. 155-4 at 1.) Baldwin's "Doctor's note" dated November 28, 2022 states, "reschedule."

On December 15, 2022, "licensed dentist and periodontist," Dr. Jenkins, "performed periodontal probing and diagnosed Plaintiff with Stage 3, Grade C periodontitis." (Dkt. No. 154-2 at 1–2.) Baldwin "was present during this evaluation." (Dkt. No. 154-3 at 2.) Dr. Jenkins avers that he was at Perry on that date, "when Dr. Cynthia Baldwin asked me to assess Plaintiff because he was complaining of bleeding gums. As a periodontist, I have additional training and experience in gum disease, so I agreed to see Plaintiff." (Dkt. No. 154-2 at 1.) Dr. Jenkins is not an SCDC employee; rather he "was contracted to provide dental services to inmates at" SCDC, "upon request by general dentists." (Dkt. Nos. 151-2 at 2; 154-2 at 1.)

Dr. Jenkin's December 15, 2022 "Doctor's Note" documents his diagnosis and indicates that the plan is a "Full mouth SRP." (Dkt. No. 151-3 at 1.) Dr. Jenkins avers, "Periodontitis is commonly treated with a procedure known as scaling and root planing ("SRP")." (Dkt. No. 154-2 at 2.) Licensed dentist, Dr. Jason Spitzer, avers,

> The SRP is not [to] be done all at one time, but instead is broken down into four quadrants and one quadrant is done at each visit. This can be a painful procedure and the dentist generally will do one quadrant and allow several weeks for it to heal before doing the SRP on the next quadrant.

---

[7] In his unverified summary judgment response, Plaintiff denies that he refused to be escorted by security. (Dkt. No. 175 at 5.) In support, he offers an RTSM he submitted to "Nurse Practitioner Enloe" on November 1, 2022, stating that "medical records" he "obtained today" show that he "refused to come for N.P. Apt for PRN on "10/27/2022." (Dkt. No. 175-1 at 30.) In the RTSM, Plaintiff denies being "asked to come see you there." (*Id.*) The referenced RTSM does not relate to Plaintiff's documented October 31, 2022 refusal, and the Court need not accept Plaintiff's unverified allegation on this issue as fact. *See Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) ("[C]onclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion."); *Coward v. Clarke*, No. 7:20-cv-00702, 2022 WL 1018407, at *9 (W.D. Va. Apr. 5, 2022) ("In [plaintiff's] unverified summary judgment responses, he also makes pronouncements, unsupported with dates or documentation, that the court need not accept as fact.").

(Dkt. No. 151-5 at 2; *see also* Dkt. No. 151-2 at 3.) Relatedly, in an interrogatory response, Dr. Spitzer states that, relevant to Plaintiff's periodontitis diagnosis, Stage 3 equals "Early periodontitis" and Grade C equals "rapid rate of progression."[8] (Dkt. No. 174-1 at 39–40.)

Plaintiff alleges that during the December 15, 2022 visit, Dr. Jenkins told Plaintiff he "would return in two weeks to perform the [SRP] procedure." (Dkt. No. 35-2 at 10–11.) In his deposition, Plaintiff testified that Baldwin acted as Jenkins' assistant during this visit, and that he did not ask Baldwin or Jenkins to address his claims regarding a cracked tooth at that time. (Dkt. No. 154-4 at 5–7.) Baldwin does "not recall Plaintiff mentioning the cracked tooth at this encounter." (Dkt. No. 154-3 at 2.) Likewise, Jenkins does "not recall observing a cracked tooth during [his] exam." (Dkt. No. 154-2 at 2.)

In his affidavit, Dr. Jenkins avers that he "returned to Perry to begin SRP on Plaintiff" on January 5, 2023, "but [Plaintiff] had been transferred to Broad River." (Dkt. No. 154-2 at 2.) Plaintiff's medical record documents this notation by Dr. Jenkins. (Dkt. No. 151-3 at 1.) Dr. Jenkins avers, "I did not have any control over when inmates were transferred and had no knowledge of Plaintiff's planned transfer." (Dkt. No. 154-2 at 2.)

It is undisputed Plaintiff had no further contact with Dr. Jenkins. Relevant to this issue, Dr. Jenkins avers,

> As a specialist treating inmates across the various SCDC institutions, I did not request to see inmates; rather, I saw the inmates who were placed on my schedule, typically based on referrals from the general dentists for the specific institutions. Plaintiff was never placed back on my schedule, and I was never asked to see Plaintiff again. I was not made aware of any of Plaintiff's Request to Staff Members.

---

[8] In this same discovery response, Dr. Spitzer further explains, specific to the remaining grades and stages of periodontal disease, "Grade A: slow rate of progression"; "Grade B: moderate rate of progression"; "Stage 1: Bleeding gums"; "Stage 2: Gingivitis"; "Stage 4: Moderate periodontitis"; "Stage 5: Advanced periodontitis." (Dkt. No. 174-1 at 39–40.)

(*Id.*)

As noted above, Plaintiff was transferred from Perry to Broad River on January 4, 2023. (Dkt. No. 151-2 at 2.) Dr. Baldwin avers that at that point, "[t]he dental employees at Broad River assumed Plaintiff's dental care, and I have not been involved in Plaintiff's dental care since he was transferred there." (Dkt. No. 154-3 at 2.) Relevant here, Dr. Spitzer testified in his deposition that once Dr. Jenkins recommended the treatment for Plaintiff's periodontitis, it was not Dr. Jenkins' "responsibility to follow up with that treatment." (Dkt. No. 186-2 at 2.) According to Dr. Spitzer, "[w]e take it over from there." (*Id.*)

Once at Broad River, Plaintiff was seen by Dr. Spitzer on April 21, 2023. (Dkt. No. 151-3 at 1.) Affidavit testimony from Defendants Nicholson and Spitzer both state that while the April 21, 2023 visit is identified as an "emergency exam" in Plaintiff's medical record, "this is not accurate." (Dkt. No. 151-2 at 2; 151-5 at 1.) In his affidavit, Dr. Nicholson avers,

> [Dr. Spitzer] did a limited exam as Plaintiff had already been seen by a periodontist. Dr. Spitzer agreed that Plaintiff should have a 4 quad SRP. The medical records system referenced the April 2023 visit as an emergency visit, but this is not accurate. The system designated the visit in this manner due to how the system is set up. The SRP did need to be completed, but it is not an emergent procedure. If the individual is performing proper oral hygiene as instructed, the calculus will build up very slowly and the condition will not worsen. If the individual fails to perform proper oral hygiene, then even with the SRP the condition will continue to worsen and will do so much more quickly.

(Dkt. No. 151-2 at 2–3; *see also* Dkt. No. 151-5 at 1–2.)

Dr. Spitzer performed the first quadrant SRP on September 22, 2023; the second quadrant SRP on October 27, 2023; and the third quadrant on November 17, 2023. (Dkt. No. 151-3 at 1–2; Dkt. No. 151-2 at 3; 151-5 at 2.) Specific to the November 17, 2023 appointment, Dr. Spitzer avers,

> Plaintiff had a cracked tooth and complained about this at the November 17 appointment . . . . After this appointment, I submitted a consultation request to Dr.

> Nicholson, the SCDC Dental Director, requesting authorization to schedule
> Plaintiff for an appointment with an oral surgeon. I submitted the consultation
> request on November 17, 2023 after the SRP appointment.

(Dkt. No. 151-5 at 2.) A "Doctor's Note" from Dr. Nicholson, dated November 22, 2023, states,

"Approved for scheduling with oral surgery." (Dkt. No. 151-3 at 2.) Dr. Spitzer left employment

with SCDC in December 2023, before he "was able to complete the fourth quadrant." (Dkt. No.

151-5 at 2.)

Dr. Nicholson completed the fourth quadrant on January 5, 2024. (Dkt. No. 151-2 at 3;

151-3 at 2.) Consistent with Dr. Spitzer's testimony, *supra*, Dr. Nicholson avers that

> The SRP is done in four visits with one quadrant being done at each visit. The SRP
> can be a painful procedure and the dentist generally will do one quadrant and allow
> several weeks for it to heal before doing the SRP on the next quadrant. The dentist
> will generally want to see how the patient responds to the first quadrant of the SRP
> before moving to the next. In addition, individuals are generally injected with
> numbing medication in order to perform the SRP. It would be dangerous to inject
> all areas of the mouth in order to perform all four quadrants of the SRP at the same
> time. Dentists can only use so much numbing medication at one time and this is
> another reason the SRP is done in four quadrants.

(Dkt. No. 151-2 at 3.) Records from this visit document that Dr. Nicholson "stressed daily floss"

and "reviewed floss techniques" with Plaintiff. (Dkt. No. 151-3 at 2.)

Dr. Nicholson avers that he also "performed a full dental exam of Plaintiff" on January 5,

2024. (*Id.*) According to Dr. Nicholson,

> Plaintiff stated that he had a cracked tooth when I saw him on January 5 and I
> observed the tooth and agreed that it needed to be extracted. It was not an emergent
> situation, but the tooth did need to be extracted. I do not recall Plaintiff complaining
> about pain with the cracked tooth. I did not prescribe any pain medication for
> Plaintiff and would have done so if he had complained about pain.

(*Id.*) During his deposition, Plaintiff testified that during this January 5, 2024 appointment, he told

Dr. Nicholson his "cracked, half-missing tooth" had "been bothering me about 11 months. . . . [I]t

started out as . . . a minor ache" and "increased" to the point of "throbbing if I laid down at night."

(Dkt. No. 155-3 at 10–11.) Dr. Nicholson arranged for Plaintiff to be seen by Dr. Anesa Stackhouse, a general dentist who "had oral surgery residency training." (*Id.* at 4.) On January 12, 2024, with Dr. Nicholson's assistance, Dr. Stackhouse "completed x-rays and extracted Plaintiff's tooth." (*Id.*; *see also* Dkt. No. 151-3 at 2–3.)

Plaintiff saw Dr. Nicholson again on May 3, 2024 for a "Perio Post-op appointment." (Dkt. No. 151-2 at 4.) As averred by Dr. Nicholson and reflected in his "Doctor's note," he informed Plaintiff "that his periodontal probing depths were improving and that he needed to continue with brushing. Plaintiff stated that he had an issue with food being caught in a specific area and [Dr. Nicholson] obtained bitewing x-rays and decided to perform debridement with cavitron which uses ultrasonic scaling to remove plaque and tartar from teeth." (Dkt. No. 151-2 at 4; 151-3 at 3.) "Plaintiff was noted to be doing well and was instructed to write an inmate request to dental if he had additional issues or when needed for his next evaluation." (*Id.*) Dr. Nicholson avers, "Based on my exam of Plaintiff, his periodontal disease was stable when I saw him on May 3, 2024." (*Id.*) After this May 3, 2024 appointment, the record does not document any further complaints by Plaintiff about dental issues or otherwise indicate Plaintiff needs any additional dental treatment.

Dr. Nicholson avers,

Based on my review of Plaintiff's records and examination of Plaintiff, it is my opinion that for Plaintiff to have the level of periodontal disease that he does at his age it is due to poor oral hygiene. Periodontal disease is a very slow progressing condition and in my opinion, beginning the SRP in September 2023 did not change Plaintiffs condition and the ultimate outcome concerning his dental condition was not changed. I would state that even though the SRP is completed, if Plaintiff does not practice proper oral hygiene, the periodontal disease will progress more rapidly even with the SRP.

(*Id.* at 5.) In his affidavit, Dr. Spitzer offers a similar opinion. (Dkt. No. 151-5 at 2–3.)

Plaintiff alleges that, based on the foregoing conduct, he has "suffered worsening of periodontal disease." (Dkt. No. 35-2 at 22.) More specifically, Plaintiff alleges that he has

experienced "or at minimum is at a substantial risk of experiencing" heavy and constant bleeding; sore gums and tooth pain; bone loss; abscess; infections; disease progression and continued damage. (Dkt. No. 35-2 at 22.) Plaintiff further alleges he has "suffered worsening of cracked (half-missing) tooth." (*Id*.) Here, he alleges that he has experienced "or at minimum is at a substantial risk of experiencing" teeth deterioration; constant and recurring pain; worsening pain; abscess; infection; and continued damage or need for more costly and painful treatments." (*Id*.)

## STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Sedar v. Reston Town Center Property, LLC*, 988 F.3d 756, 763 (4th Cir. 2021)("The requirement to construe the facts, and all reasonable inferences therefrom, in the light most favorable to the non-moving party does not require [the court] to accept cherry-picked snippets of the testimony divorced from their context."). Conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

Because Plaintiff is representing himself, these standards must be applied while liberally construing his filings in this case. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## DISCUSSION

In their Motions for Summary Judgment, the Dental Defendants argue: (1) Plaintiff has failed to exhaust his administrative remedies; (2) Plaintiff's § 1983 claims fail as a matter of law; (3) Plaintiff has no evidence of damages; and (4) Plaintiff has failed to establish he is entitled to punitive damages. (Dkt. Nos. 154; 155.)

### A.    Exhaustion

Defendants argue that Plaintiff has failed to exhaust his administrative remedies with respect to his claims in this action. (Dkt. No. 154-1 at 11–12; 155-1 at 13–14.) More specifically, they argue a failure to exhaust because: (1) Plaintiff failed to file a Step 2 grievance; and (2) Plaintiff's submitted grievance did not provide a fair opportunity for SCDC to address the allegations against the Dental Defendants prior to this lawsuit. (*Id.*)

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Through the enactment of this statute, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 741 (2001); *see also Porter v. Nussle*, 534 U.S. 516 (2002).

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.*

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also Johnson v. Ozmint*, 567 F. Supp. 2d 806, 815–16 (D.S.C. 2008) (granting summary judgment on the plaintiff's § 1983 claims for failure to exhaust his administrative remedies with respect to those claims).

"Failure to exhaust is an affirmative defense, and defendants have the burden of raising and proving the absence of exhaustion." *Baxley v. Jividen*, 508 F. Supp. 3d 28, 46 (S.D.W. Va. 2020) (citation and internal quotation marks omitted). "However, if a defendant makes a threshold showing of failure to exhaust, the burden of showing that administrative remedies were unavailable falls to the plaintiff." *Id.* (citation and internal quotation marks omitted).

1.    **SCDC Grievance Procedure**

The SCDC grievance procedure is outlined in SCDC Policy GA-01.12 ("Inmate Grievance System").[9] Subject to certain exceptions, the Inmate Grievance System requires that inmates

---

[9] Notably, while certain sections of SCDC Policy GA-01.12 are cited by the Dental Defendants (Dkt. Nos. 154-1 at 11; 155-1 at 14), only Plaintiff has submitted any portion of the Policy. (Dkt. No. 174-1 at 17–18.) Regardless, "[t]he Court may take judicial notice of the SCDC grievance process," and this specific policy. *Malik v. Ward*, No. CIVA 8:08-cv-01886, 2010 WL 936777, at *2 (D.S.C. Mar. 16, 2010). The version of Policy GA-01.12 that was submitted by Plaintiff and is available online was issued on September 1, 2023, *after* Plaintiff submitted the grievance at issue. However, Defendants do not directly dispute Plaintiff's apparent assertion that this version of the Policy applies to his claims. *See* https://doc.sc.gov/sites/doc/files/Documents/policy/GA-01-12.pdf (last visited Jan. 22, 2025).

initially attempt to resolve grievances informally by "submitting a Request to Staff Member Form to the appropriate supervisor/staff within eight (8) working days of the incident." (*Id.* ¶ 13.2.) When submitting the Step 1 grievance,

> The grievance form must contain information about how, with whom, and when attempts were made to resolve the problem informally within eight (8) working days of the appropriate supervisor's signature date on the SCDC Form 19-11, "Inmate Request To Staff Member" (RTSM). The grievance also must contain a brief statement of the circumstances of the grievance, to include date and time, why the grievant believes s/he is entitled to relief, and a brief statement of the action(s) requested for which relief may be available through the grievance procedure. (NOTE: A copy of the RTSM must be attached to the Step 1 grievance form.)

(*Id.*)

> Additionally,

> Unless a separate SCDC policy requires filing a grievance within a shorter period of time, any and all grievances that involve a continuous matter (prison industries pay) must be filed within two (2) years of when the issue arose, or the grievant should have known about it. If the issue is older than two (2) years but has continued to be an issue that is grievable, only the two (2) year portion immediately prior to filing of the grievance will be considered. This section does not apply to grievances pertaining to PREA (Prison Rape Elimination Act) or criminal matters.[10]

(*Id.*)

If an inmate files a Step 1 grievance that does not involve criminal activity, the Warden is required to respond in writing within 45 days and advise the inmate of his right to appeal to the next level:

> The Warden will respond to the grievant in writing (in the space provided on SCDC Form 10-5, Step 1), indicating in detail the rationale for the decision rendered and any recommended remedies. The grievant will also be informed of his/her rights to appeal to the next level. The Warden will respond to the grievant no later than 45 days from the date the grievance was formally entered into the OMS system by the IGC. The response will be served by the IGC to the grievant, within ten (10) calendar days, and the grievant will sign and date the response acknowledging receipt. The IGC will maintain the original grievance for the inmate's grievance file and a copy will be given to the inmate.

---

[10] It appears this provision was newly added to the September 1, 2023 version of GA-01.12.

(*Id.* ¶ 13.5) The inmate may then appeal by filing a Form 10-5(a) Step 2 appeal to the Inmate Grievance Coordinator within five days of the receipt of the response. (*Id.* ¶ 13.7) The appeal is referred to the "responsible official" who is required to make a final decision within 90 days. (*Id.*)

Alternatively, upon receipt of a Step 1 grievance, the IGC may determine that the Step 1 grievance will not be processed, which would render the grievance "non-grievable." (*Id.* ¶ 13.3) Specifically,

> [i]f the IGC determines that the grievance will not be processed, the IGC will note this on the SCDC Form 10-5, Step 1, under "Action Taken by the IGC," maintain the original for the inmate grievance file, enter "non-grievable" into the automated system, and mail a copy of the SCDC Form 10-5, Step 1, to the inmate in a sealed envelope.

(*Id.*) The appropriate way to appeal such an "unprocessed grievance" is not through submission of a Step 2 grievance. Rather,

> [u]nprocessed (reviewed but returned) grievances may only be appealed by utilizing SCDC Form 19-11, "Inmate Request To Staff Member," (RTSM) to the Agency Inmate Grievance Coordinator within ten (10) days of the grievance being returned to the inmate. The inmate must provide a copy of the unprocessed (reviewed but returned) grievance with the RTSM. The inmate cannot file a grievance against the IGC for un-processing the grievance. If the inmate has failed to provide necessary information, or has not signed and dated the grievance, s/he will be given five (5) calendar days to re-file a properly filled out grievance; this will be noted on the Step 1 form with a due back date included. This information will also be entered into the CRT narrative when the grievance is closed as unprocessed (reviewed but returned). Unprocessed (reviewed but returned) grievances that have been given five (5) days to re-file cannot be appealed to the Agency Inmate Grievance Coordinator.

(*Id.*)

## 2.    Unavailability of Administrative Remedy and Notice

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross v. Blake*, the Supreme Court set forth three scenarios where the

administrative process is considered "unavailable": (1) the administrative process "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the administrative process is so opaque that no ordinary prisoner can discern or navigate through the process; and (3) the "administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." 136 S.Ct. 1850, 1853–54 (2016).

The examples provided in *Ross* with respect to the first scenario indicate that a deficiency of this type would be systemic or widespread, or at least not isolated. *See Ross*, 136 S. Ct. at 1859 (giving the following examples of when an administrative remedy is a dead end: when a prison handbook directs inmates to submit their grievances to a particular administrative office, but in practice that office disclaims authority to consider them; or when administrative officials have apparent authority but decline ever to exercise it). With respect to the third scenario, *Ross* seems to require that, to prevail on an assertion that prison officials thwarted his efforts to exhaust, an inmate must be able to demonstrate something more than isolated negligence on behalf of prison officials. *Id*. at 1860 n.3 (citing cases where correctional facilities staff misled the inmate about the existence of a process or its rules; used threats or intimidation; or misled him into thinking he had done everything necessary to use the process).

To prove unavailability, the inmate must "adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure." *Graham v. Gentry*, 413 Fed. App'x 660, 663 (4th Cir. 2011). "The district court is 'obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials.'" *Zander v. Lappin*, 415 F. App'x 491, 492 (4th Cir. 2011) (quoting *Aquilar–Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)).

### 3.    Evidence

Relevant to the exhaustion issue, the record shows Plaintiff submitted a RTSM at Broad

River on March 6, 2023, stating,

> I was seen while at Perry Corr. Inst. By a dentist that came in from Columbia. It was determined I have gum disease and need a deep clean of my gums. I was transferred here and my condition is getting worse while I'm waiting on dental care. It's been going on a year with this condition . . . . Also, it was determined I have a wisdom tooth that's cracked completely in half (half the tooth is gone) and the remainder needs to come out. It's painful and again it seems nothing is being done toward treating my issues.

(Dkt. No. 35-3 at 6.) Plaintiff received a response to his RTSM on March 8, 2023, stating that

"[t]here are several guys ahead of you to be seen, but" Plaintiff is "scheduled for an upcoming

appointment. Please be patient." (*Id*.)

> Plaintiff then submitted a Step 1 Grievance at Broad River on March 16, 2023, stating

> I have been diagnosed by a dental (dentist) specialist, while at Perry, that I had a slight case of gum disease and was going to receive a deep cleaning of my gums to correct the problem. I was transferred to Broad River shortly after that dental consultation and immediately informed dental here of my dental problems and having a diagnosis and course of treatment I was waiting to receive. It has been going on a year without receiving treatment. Therefore, I'm doing a grievance for lack of/delay in dental treatment.

(Dkt. No. 35-3 at 7.)

The Grievance was received on March 30, 2023, and Defendant Samantha Mabe, Inmate

Grievance Coordinator at Broad River, responded the next day. Her response checks the boxes

"Processed" and "Other" and states:

> You have exceeded the established time frame for filing a grievance on this issue. Pursuant to SCDC Policy GA-01.12 Inmate Grievance System, you have eight (8) days from date of incident to file a Grievance. The initial incident occurred approximately a year ago as stated in your grievance and your grievance was not reviewed until March 30, 2023. Therefore, your grievance is being processed and returned.

(*Id.*)

18

In a sworn affidavit, Plaintiff avers, "I then requested an inmate request to staff member form from staff officers. [W]hen I was told for several days staff didn't have any request to staff member forms, I drafted a handwritten request to [Defendant] Felicia McKie, and requested/appealed to her to file/process my grievance." (Dkt. No. 35-4 at 2.) In his handwritten request, dated April 4, 2023, Plaintiff states he has "enclosed" the Step 1 grievance with his request, and provides the Grievance Number. (Dkt. No. 35-3 at 8.) In his request, Plaintiff states that because he is complaining of an "ongoing issue," it should have been processed as timely filed. (*Id*.) He further states, "the fact that I have provided context of how long and which prison/institution(s) have participated in such delay for dental treatment does not warrant the grievance coordinator's actions in refusing to process said grievance." (*Id.* at 9.)

The record shows that McKie, the Agency Inmate Grievance Coordinator/Branch Chief, responded to Plaintiff's handwritten request on April 10, 2023, with an "Inmate Correspondence" form, stating that Plaintiff's "correspondence is being returned in accordance with SCDC Policy, GA-06.04, Request to Staff Member and returned to you for . . . the following reasons"; namely, "Inmates must use the correct form (Request to Staff Member SCDC 19-11). Attachments will NOT be accepted" and "OTHER: You are advised to read policy GA-06.04, "Request To Staff Member" and GA-01.12, 'Inmate Grievance Systems' and follow proper procedures. Your request is denied." (*Id*. at 12.)

McKie and Mabe have both submitted affidavits. (Dkt. Nos. 151-8; 151-9.) In her affidavit, McKie avers that she "handle[s] all grievances in accordance with SCDC policy, including Plaintiff's grievance." (Dkt. No. 151-9 at 1–2.) Mabe does not directly reference SCDC Policy GA-01.12, and McKie merely states that Plaintiff's Step 1 Grievance "was returned to Plaintiff on March 31, 2023 because he exceeded the timeframe for filing the grievance set forth by SCDC

policy." (*Id*. at 1.) Defendants do not address Plaintiff's allegation that he was unable to obtain a RTSM form to appeal his "unprocessed" Step 1 Grievance. In her deposition, McKie explained her response to Plaintiff's April 4, 2023 handwritten request, testifying: "Grievance BRCI-027223 was processed and returned to you and concluded when I determined that it would not be reopened, because the reasoning provided to you was justified according to applicable policies." (Dkt. No. 175-1 at 46.)

Upon careful review, the undersigned finds Defendants have not met their burden of establishing Plaintiff failed to exhaust his administrative remedies based on Plaintiff's failure to submit a Step 2 grievance. Notably "[a]ppeal of an unprocessed Step 1 Grievance Form may constitute exhaustion of administrative remedies." *Butler v. Bessinger*, No. CV 4:16-3662-RMG, 2019 WL 181530, at *3 (D.S.C. Jan. 14, 2019). A question of fact exists as to whether Plaintiff was prevented, through no fault of his own, from obtaining the necessary SCDC Form 19-11 to appeal his unprocessed grievance. Further, McKie's own deposition testimony indicates Plaintiff's appeal of the unprocessed Step 1 grievance "concluded" when McKie responded to Plaintiff's handwritten request on April 10, 2023. (Dkt. No. 175-1 at 46.)

In sum, when the record is viewed in the light most favorable to Plaintiff, a reasonable fact finder could conclude that Plaintiff did exhaust his administrative remedies when he timely appealed his Step 1 grievance in a handwritten request to McKie, the Agency Inmate Grievance Coordinator, McKie responded six days letter, and she later testified that her response "concluded" that grievance. *See Widener v. City of Bristol*, No. 1:13-cv-00053, 2014 WL 3058560, at *3–4 (W.D. Va. July 2, 2014) (denying defendants' summary judgment motion based on non-exhaustion in light of evidence "that the plaintiff attempted to fully exhaust the administrative remedies available to him before filing this suit" and the defendants' failure to meet their burden of proving

that the plaintiff's efforts did not constitute exhaustion); *cf. Singleton v. McKie*, No. 2:1 l-cv-676-TLV-BHH, 2012 WL 1038762, at *5 (D.S.C. Mar. 9, 2012) (finding plaintiff did not exhaust administrative remedies where "Plaintiff was free to . . . file a Step 2 Grievance, or otherwise appeal the determination of his Step 1 Grievances [but] Plaintiff did not do so"); *Livingston v. Padula*, No. 8:08-cv-3064-HFF, 2009 WL 1872107, at *4 (D.S.C. June 29, 2009) (finding plaintiff did not exhaust administrative remedies where he "was free to . . . appeal the determination not to process the initial grievance [but] ... did nothing").

Additionally, "prison grievances do not have to name particular defendants in order to satisfy the PLRA's exhaustion requirements against those defendants," and the Dental Defendants do not provide any compelling reason to find failure to exhaust based on the content of Plaintiff's submitted grievance and referenced March 6, 2023 RTSM. *Nichols v. Gamewell*, No. 5:19-cv-00055-MR, 2020 WL 6050582, at *4 (W.D.N.C. Oct. 13, 2020) (citing *Moore v. Bennette*, 517 F.3d 717, 726 (4th Cir. 2008)). Accordingly, summary judgment should be denied for Defendants Baldwin and Jenkins on the basis of non-exhaustion.

**B.    § 1983 Deliberate Indifference Claims**

The Dental Defendants next argue they are entitled to summary judgment on the merits of Plaintiff's claims. Plaintiff brings § 1983 claims against Defendants Jenkins and Baldwin for deliberate indifference to his serious medical needs.

To establish a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must put forth facts sufficient to demonstrate that an official was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Pfaller v. Amonette*, 55 F.4th 436, 445 (4th Cir. 2022). A deliberate indifference claim has both an objective and subjective component. *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019). "That is, the plaintiff must

demonstrate that the defendant prison official acted with 'deliberate indifference' (the subjective component) to the plaintiff's 'serious medical needs' (the objective component)." *Id*. (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

A medical condition is serious enough to satisfy the objective component if it has "been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. (citing *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016)). The subjective component of a deliberate indifference claim has two subparts: "a plaintiff must show the prison official (1) had actual knowledge of the risk of harm to the inmate and (2) recognized that his actions were insufficient to mitigate the risk of harm to the inmate arising from his medical needs." *Pfaller*, 55 F.4th at 445 (citing *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)) (internal quotation marks omitted).

While mere negligence is not enough, *id*. (citing *De'lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003)), evidence of an official's "actual purposive intent" is not required, *id*. (citing *De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013)). "Instead, deliberate indifference is most akin to criminal-law recklessness." *Id*. "[S]o long as the official who knew of a substantial risk to inmate health or safety 'responded reasonably to the risk,' they cannot be found liable under the Eighth Amendment, 'even if the harm ultimately was not averted.'" *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 844 (1994)). Indeed, an inmate's mere disagreement with medical providers about the proper course of treatment does not support an Eighth Amendment cause of action. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

### 1.     Analysis of § 1983 Claim as to Defendant Jenkins

As noted, *supra*, Plaintiff alleges that Dr. Jenkins was deliberately indifferent to Plaintiff's serious medical needs when he: (1) failed to perform proper treatment for Plaintiff's periodontitis

while Plaintiff was at Perry; and (2) then failed to follow up with Plaintiff after Plaintiff's transfer to Broad River Correctional Institution ("Broad River"). (*Id*. at 10–12; 17–23.) In his briefing, Plaintiff summarizes this claim as "Defendant Jenkins failed to provide and or follow up on/with providing treatment he himself prescribed." (Dkt. No. 174 at 7.)

Specific to his treatment, Plaintiff takes issue with Dr. Jenkins' failure to "perform[] and or schedule[] . . . a Panorex and bite-wing or any other type of X-ray to be performed on Plaintiff," claiming that this "is the medically accepted standard for properly determining the level of care and treatment a patient needs." (Dkt. No. 35-2 at 11.) Plaintiff appears to allege that this failure amounts to an Eighth Amendment violation. (*Id.* at 18–19; *see also* Dkt. No. 174 at 4, 11) In support, Plaintiff relies on expert testimony provided in an out-of-circuit case, *Bownes v. Washington*, 2023 WL 424259 (E.D. Mich. Jan. 26, 2023). (Dkt. No. 174 at 11–12.) *Bownes* considered a summary judgment motion in a class action wherein the inmate plaintiffs alleged, *inter alia*, that the defendant prison dental director was deliberately indifferent to the inmates' periodontal disease by failing to diagnose the disease with bitewing x-rays (at intake) and periodontal probing and charting (at any time). 2023 WL 424259 at *1. In rendering its decision, the district court considered expert testimony indicating that periodontitis cannot be accurately diagnosed without both probing and bitewing x-rays. *Id.* at *4–*5. In denying summary judgment on this deliberate indifference claim, the court focused on the prison's failure to perform periodontal probing, finding

> a reasonable factfinder could conclude that the universal standard, i.e., what even a half-decent dentist would do, is to perform periodontal probing to diagnose periodontitis. As such, a reasonable factfinder could conclude that any method of diagnosing periodontitis that does not involve probing is such a deviation from the professional norm that the decision to use such a method was not based on medical judgment but, instead, indifference.

*Id*. at *23. The court also indicated a factual issue existed as to whether the prison's failure to use bitewing x-rays was "attributable to deliberate indifference to periodontitis," stating "the Court would like more testimony on whether, for certain hard-to-diagnose cases of periodontitis . . . , [defendant] appreciates that [the prison's] method of diagnosing the disease risks not identifying its presence, and if he does, whether he further appreciates that a missed diagnosis risks the disease advancing to the point of serious harm." *Id.*

> Here, Plaintiff also cites to Dr. Nicholson's deposition testimony, wherein Plaintiff asked,
>
> Let's say for sake of argument that the professional standard of modern medically accepted practice for determining a treatment plan for periodontal disease includes not just probing, but bitewing x-rays, both, both things and the dentist did not perform the bitewing x-rays or vice versa. If the dentist did not perform probing, but performed bitewing x-rays only, singularly, would that fall beneath the professional standard of modern medically accepted practice?

(Dkt. No. 174-1 at 21–22; *see also* Dkt. No. 174 at 12.) To this "hypothetical[]" question, Dr. Nicholson responded, "If the standard says it and it is not done, then no the standard would not have been met." (Dkt. No. 174-1 at 21–22; *see also* Dkt. No. 174 at 12.)

Upon careful review, the undersigned finds no merit to Plaintiff's argument that Dr. Jenkins' failure to take perform certain diagnostic measures for Plaintiff's periodontitis amounts to a constitutional violation. As an initial matter, such allegations amount to no more than a disagreement about appropriate diagnostic techniques, which is not constitutional violation.[11] *See*

---

[11] Plaintiff makes no argument that he brings a separate claim against Jenkins for medical malpractice under South Carolina law, and the undersigned does not construe any such claim in the Amended Complaint. Regardless, Plaintiff has not produced expert testimony as to the standard of care, any alleged failure to conform to the required standard, or that the alleged violation was a proximate cause of his injuries. Nor has Plaintiff otherwise presented a plausible argument that establishes that the alleged negligent acts lie within the ambit of common knowledge and experience, so that no special learning is needed to evaluate the conduct of the Jenkins. Accordingly, the undersigned finds any such claim fails as a matter of law. *See David v. McLeod Reg'l Med. Ctr.*, 626 S.E.2d 1, 4 (S.C. 2006) (to establish medical malpractice under South Carolina law, the "plaintiff must provide expert testimony to establish both the required standard of care and the defendants' failure to conform to that standard, unless the subject matter lies within the ambit of common knowledge so that no special learning is required to evaluate the conduct of the defendants").

*e.g.*, *Estelle*, 429 U.S. at 107 ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment."); *Wester v. Jones*, 554 F.2d 1285, 1286 (4th Cir. 1977) (finding no deliberate indifference where doctor was "negligent in examining [inmate] and in making an incorrect diagnosis"); *Hoskinson v. Boakya*, No. 1:21-cv-1320 (AJT/IDD), 2023 WL 3165185, at *6 (E.D. Va. Apr. 28, 2023) ("Plaintiff cannot establish deliberate indifference based on his disagreement with the doctor's reasonable diagnostic procedures."); *Wright v. Hansen*, No. 8:17-cv-2805-DCC-JDA, 2020 WL 6265233, at *6 (D.S.C. May 28, 2020) ("And, as for the assertion that Smith 'failed to properly investigate, treat, diagnose or test Plaintiff's left arm injury,' that is simply an allegation of medical negligence; it does not constitute a sufficient allegation of deliberate indifference."), *adopted by*, 2020 WL 5652140 (D.S.C. Sept. 23, 2020); *Bridges v. Keller*, No. 1:10-cv-113, 2012 WL 3239774, at *7 (W.D.N.C. Aug. 7, 2012) ("The Eighth Amendment's prohibition on cruel and unusual punishment is not violated when a doctor simply resolves the question whether additional diagnostic techniques or forms of treatment is indicated." (quoting *Self v. Crum,* 439 F.3d 1227, 1232 (10th Cir.), *cert. denied* 549 U.S. 856, (2006) (citation and internal quotations omitted))). Additionally, even if *Bownes* were applicable here, *Bownes* indicates that Dr. Jenkins met the applicable standard of care by performing periodontal probing to diagnose Plaintiff's periodontitis. Finally, Nicholson's referenced deposition testimony does not evidence any concession by Defendants that the diagnostic techniques used by Dr. Jenkins failed to meet the applicable standard of care.

Turning to Dr. Jenkins' alleged "failure to follow up on/with his own prescribed treatment," the record evidence establishes that Dr. Jenkins was not responsible for scheduling Plaintiff's dental treatment, and he was not otherwise involved in scheduling Plaintiff's care. The record shows Dr. Jenkins was scheduled to begin Plaintiff's SRP procedure 21 days after he first

examined Plaintiff and diagnosed him with Stage 3, Grade C periodontitis. When Dr. Jenkins arrived for the scheduled appointment, however, Plaintiff had already been transferred. Dr. Jenkins noted the transfer in Plaintiff's dental records, and his involvement in Plaintiff's care came to an end. Even when construed in the light most favorable to Plaintiff, the evidence does not establish a genuine issue of material fact that Dr. Jenkins treated Plaintiff with deliberate indifference. *See Formica v. Aylor*, 739 F. App'x 745, 757–58 (4th Cir. 2018) (finding subjective prong satisfied when defendant "was closely involved in [the plaintiff's] dental treatment process" *and* failed to schedule a dental appointment to address a decaying molar); *Hawkins v. Allen*, No. 3:24-cv-251 (DJN), 2024 WL 3658223, at *9 (E.D. Va. Aug. 5, 2024) (granting summary judgment on § 1983 claim regarding delayed dental care because " the Court cannot infer that [defendant dentist] had the requisite level of awareness or involvement with scheduling matters to be considered as having acted in a deliberately indifferent manner to Plaintiff's objectively serious medical need").

Additionally, the undersigned cannot find a genuine issue of material fact that Plaintiff's periodontitis presented a serious medical need while Plaintiff was at Perry. *See Coward v. Clarke*, No. 7:20-cv-00702, 2022 WL 1018407, at *7 (W.D. Va. Apr. 5, 2022) ("A simple diagnosis of 'periodontitis is not a serious medical need' for a particular type of treatment." (quoting *Moore v. Parham*, No. 1:16-cv-1519 (CMH/IDD), 2017 WL 4118458, at *5 (E.D. Va. Mar. 23, 2017), *aff'd*, 696 F. App'x 661 (4th Cir. 2017); *see also Bownes v. Washington*, No. 14-11691, 2023 WL 424259, at *19 (E.D. Mich. Jan. 26, 2023) ("[T]he Court agrees with Defendants that a mere diagnosis of periodontitis does not, by itself, establish a substantial risk of serious harm."). There is no evidence that, due to Plaintiff's periodontitis, Plaintiff has suffered an infection or abscess, or otherwise needed any teeth extracted because of gum disease. Plaintiff did not complain of any pain from his bleeding gums while at Perry, and the first notation of inflammation in Plaintiff's

gums was on September 22, 2023, almost ten months after Plaintiff had transferred from Perry. (Dkt. No. 151-3 at 1.)

Because Plaintiff cannot establish the subjective and objective components of this Eighth Amendment claim, the undersigned recommends Dr. Jenkins be granted summary judgment.[12]

### 2. Analysis of § 1983 Claim as to Defendant Baldwin

As noted, *supra*, Plaintiff alleges that Dr. Baldwin was deliberately indifferent to Plaintiff's serious medical needs while Plaintiff was at Perry when she: (1) failed to diagnose and then adequately treat Plaintiff's periodontitis; and (2) failed to treat Plaintiff's cracked tooth. (Dkt. No. 35-2 at 7–10; 17–23.)

### 1. Periodontitis

As an initial matter, for the reasons discussed *supra* section B.1, the undersigned cannot find a genuine issue of material fact that Plaintiff's periodontitis presented a serious medical need while Plaintiff was at Perry. Accordingly, even when construed in the light most favorable to Plaintiff, the undersigned cannot find that Baldwin knew of and disregarded Plaintiff's serious medical needs while Plaintiff was at Perry. *See DePaola v. Clarke*, 884 F.3d 481, 488–89 (4th Cir. 2018) (dismissing § 1983 claim premised on denial of treatment for physical needs because plaintiff "has failed to allege serious physical health needs to which any of the defendants were deliberately indifferent").

Even assuming Plaintiff's § 1983 deliberate indifference claim satisfied the objective component, the evidence, construed in the light most favorable to Plaintiff, does not reasonably suggest that Baldwin acted with actual intent or reckless disregard with respect to Plaintiff's periodontitis. *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) ("Deliberate indifference may

---

[12] Having resolved Jenkins' Motion on these grounds, the undersigned does not address his remaining arguments for summary judgment.

be demonstrated by either actual intent or reckless disregard."), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. When Baldwin examined Plaintiff on May 25, 2022 she documented his statement that his "gums bleed a lot." (Dkt. No. 151-3 at 1.) However, Baldwin did not "observe heavy bleeding" during that exam and she was not "alarm[ed]" by "Plaintiff's gums." (*Id*.; 154-3 at 1.) Plaintiff later submitted his June 30, 2022 "Dental Request[],"complaining of "constant" bleeding since the exam, that occurs "not just when I brush my teeth." (Dkt. No. 175-1 at 34.)

At that point, Baldwin's July 11, 2022 response stated Plaintiff's symptoms were consistent with gingivitis and could be periodontal disease "if it persists." (Dkt. No. 175 at 13.) After Plaintiff filed a RTSM on August 30, 2022, complaining that the "problem is getting worse, not better," even with regular teeth brushing, Baldwin responded on September 7, 2022, stating she would schedule Plaintiff for a Panorex x-ray "to show the roots of all your teeth." (Dkt. No. 175-1 at 33.) That same day, she made a note to "[s]chedule Panorex." (*Id*.; Dkt. No. 151-3 at 1.)

Baldwin then arranged for Plaintiff to be seen by Dr. Nicholson in September of 2022 and Dr. Jenkins in October of 2022, but those visits did not occur through no fault of her own. Additionally, Plaintiff missed several additional scheduled appointments on "Max Dental Day" in September and October of 2022, for reasons outside of Baldwin's control. Due to Baldwin's efforts, Plaintiff was examined by Dr. Jenkins on December 15, 2022 and diagnosed with Stage 3, Grade C periodontitis, which is "early periodontitis." (Dkt. No. 1774-1 at 40.) Plaintiff was transferred to Broad River approximately three weeks later, at which point the dental employees at Broad River assumed Plaintiff's dental care. Once at Broad River, Plaintiff eventually received the treatment prescribed by Dr. Jenkins for his periodontitis.

In short, the record documents that after Baldwin realized Plaintiff's bleeding gums were a persistent problem, she made consistent efforts to examine Plaintiff again and arrange for

Plaintiff's visit with periodontist Dr. Jenkins. The record shows Plaintiff missed multiple dental appointments during that time period, for reasons outside of Baldwin's control. On these facts, a reasonable fact finder could not find that Baldwin acted with either actual intent or reckless disregard with respect to Plaintiff's periodontitis. *See Miltier*, 896 F.2d at 851–52 (to establish deliberate indifference, the plaintiff must show that treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness"); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) ("To show an Eighth Amendment violation, it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition *and* the excessive risk posed by the official's action or inaction.") (emphasis added); *Wynn v. Mundo*, 367 F. Supp. 2d 832, 837 (M.D.N.C.) ("Significantly, an error of judgment on the part of prison medical staff, or inadvertent failure to provide adequate medical care, while perhaps sufficient to support an action for malpractice, will not constitute a constitutional deprivation redressable under § 1983.") (citation and internal quotation marks omitted)), *aff'd*, 142 F. App'x 193 (4th Cir. 2005).

Moreover, to the extent Plaintiff's claim is based on the alleged delay in obtaining treatment for his periodontitis, Plaintiff must show that the delayed treatment "*result[ed]* in some substantial harm" to him, such as "marked exacerbation of [his] medical condition or frequent complaints of severe pain." *Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018) (internal quotation omitted) (emphasis in original). Upon careful review, there is no evidence that Plaintiff's delayed treatment while at Perry markedly exacerbated his condition or prolonged his pain. Indeed, there is no evidence Plaintiff complained of pain from his bleeding gums while at Perry, and even by December 15, 2022, his periodontitis was still in the "early" stages. The first notation of

inflammation in Plaintiff's gums was on September 22, 2023, almost ten months after Plaintiff had transferred from Perry. (Dkt. No. 151-3 at 1.)

Because there is no evidence indicating that the delayed treatment for Plaintiff's periodontitis at Perry resulted in some *substantial* harm to Plaintiff, the undersigned cannot find Plaintiff has established an Eighth Amendment violation specific to Baldwin. *See Formica*, 739 F. App'x at 755 ("Where a deliberate indifference claim is predicated on a delay in medical care, we have ruled that there is no Eighth Amendment violation unless the delay *results* in some substantial harm to the patient, such as a marked exacerbation of the prisoner's medical condition or frequent complaints of severe pain.") (internal quotation omitted) (emphasis in original); *Hudson v. Tucker*, No. 5:22-CT-03088-M, 2024 WL 4293878, at *9 (E.D.N.C. Sept. 25, 2024) (granting summary judgment on § 1983 based on delayed dental treatment because, *inter alia*, "[t]he record does not support an inference that plaintiff's lack of a dental hygiene appointment in March or April 2021 resulted in substantial harm or caused a marked exacerbation of his dental injury"); *Stritehoff v. Green*, No. CIV. CCB-09-3003, 2010 WL 4941990, at *5 (D. Md. Nov. 30, 2010) (dismissing § 1983 claim based on delay in dental treatment because "plaintiff has failed to show that" *inter alia*, "any delay in receipt of dental evaluation and treatment caused by the failure to escort him on that date was the proximate cause of exacerbating his dental problems").

### 2.       Cracked Tooth

Turning to Plaintiff's § 1983 claim against Baldwin alleging deliberate indifference to his cracked tooth, the evidence shows that Plaintiff's "cracked tooth" was eventually extracted, at which point the problem undisputedly was resolved. Thus, to succeed on his delay claim, Plaintiff must show that the delayed extraction of the problem tooth "*result[ed]* in some substantial harm" to him, such as "marked exacerbation of [his] medical condition or frequent complaints of severe

pain." *Formica*, 739 F. App'x at 755. On this issue, even crediting Plaintiff's verified allegation that Baldwin remarked on his "cracked/half missing tooth" during her first exam, the record documents Plaintiff otherwise mentioned his tooth only one other time while he was under Baldwin's care. Specifically, in an October 19, 2022 RTSM, Plaintiff complains that his cracked tooth . . . at times is painful." (Dkt. No. 175-1 at 32.) He does not request pain medication in this RTSM, and it is undisputed that he did not raise this issue at any further point while at Perry. Because there is no evidence indicating that the delayed tooth extraction resulted in some *substantial* harm to Plaintiff while he was at Perry, the undersigned cannot find Plaintiff has established an Eighth Amendment violation specific to Baldwin on this delay claim. *See generally Moskos v. Hardee*, 24 F.4th 289, 298 (4th Cir. 2022) (delay only constitutes an Eight Amendment violation where the delay places the prisoner at a substantial risk of serious harm); *Tynes v. McCree*, No. 8:23-cv-04664-JFA-WSB, 2024 WL 4794716, at *6 (D.S.C. Oct. 17, 2024) ("A three-month gap in reporting pain . . . does not constitute the 'frequent complaints of severe pain' required to show a sufficiently serious deprivation" (quoting *Formica*, 739 F. App'x at 755)), *adopted by*, 2024 WL 4792809 (D.S.C. Nov. 14, 2024).

Alternatively, given the limited record documenting Plaintiff's cracked tooth at Perry, no reasonable fact finder could find that the risk of injury to Plaintiff from the delay in treating his cracked tooth was so obvious that Baldwin must have known that risk. *See Jackson*, 775 F.3d at 178 ("To show an Eighth Amendment violation, it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition *and* the excessive risk posed by the official's action or inaction.") (emphasis added); *Pittman v. Huneycutt*, No. 5:22-cv-00164-MR, 2025 WL 85315, at *4 (W.D.N.C. Jan. 13, 2025)

("Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable Section 1983 claim.").[13]

For the foregoing reasons, the undersigned recommends Dr. Jenkins be granted summary judgment on both of Plaintiff's § 1983 claims.[14]

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that the Motions for Summary Judgment filed by Defendants Baldwin and Jenkins (Dkt. Nos. 154; 155) BE GRANTED IN PART AND DENIED IN PART. Specifically, summary judgment should be denied to Defendants Baldwin and Jenkins on the basis of failure to exhaust. As for the merits of Plaintiff's claims, the undersigned recommends that summary judgment should be granted to Defendants Baldwin and Jenkins on Plaintiff's § 1983 deliberate indifference claims.

**IT IS SO RECOMMENDED.**

January 27, 2025
Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

---

[13] Plaintiff makes no argument that he brings a separate claim against Baldwin for medical malpractice under South Carolina law, and the undersigned does not construe any such claim in the Amended Complaint. Regardless, Plaintiff has not produced expert testimony as to the standard of care, any alleged failure to conform to the required standard, or that the alleged violation was a proximate cause of his injuries. Nor has Plaintiff otherwise presented a plausible argument that establishes that the alleged negligent acts lie within the ambit of common knowledge and experience, so that no special learning is needed to evaluate the conduct of the Baldwin. Accordingly, the undersigned finds any such claim fails as a matter of law. *See David*, 626 S.E.2d at 4 (to establish medical malpractice under South Carolina law, the "plaintiff must provide expert testimony to establish both the required standard of care and the defendants' failure to conform to that standard, unless the subject matter lies within the ambit of common knowledge so that no special learning is required to evaluate the conduct of the defendants").

[14] Having resolved Baldwin's Motion on these grounds, the undersigned does not address her remaining arguments for summary judgment.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).